UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DANIEL PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:24-cv-03558-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability and Supplemental Security Income disability benefits under 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF Nos. 1, 2. Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.[2] For the reasons provided below, plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

////

////

---

[1] Frank Bisignano is substituted as respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 17.

1

I.  **Background**

In October 2022, plaintiff filed an application for disability insurance benefits under Titles II and XVI of the Social Security Act, alleging disability beginning June 21, 2018. Administrative Record (AR) 21, 77, 375.[3] Plaintiff alleged disability due to aggressive lymphocytic lymphoma; chronic leukemia/lymphoma; B cell chronic leukemia/state 4; IBS; arthritis/cancer in upper spine disc; arthritis glenohumeral in left shoulder; condyloma; anxiety; degenerative cartridge left knee; and a lung condition. AR 77. Plaintiff's application was denied on January 24, 2023, AR 92-93, 110-11, and his request for reconsideration was denied on August 11, 2023. AR 138-19, 165-66. He requested a hearing, which was held on August 15, 2024. AR 21. On October 17, 2024, the ALJ issued a decision finding plaintiff not disabled. AR 21-35. Plaintiff sought review, which was denied on November 6, 2024, AR 5-8, and, on December 18, 2024, she initiated the instant action. ECF No. 1.

II. **Legal Standard**

A. **The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

////

////

---

[3] Defendant lodged the administrative record on February 18, 2025. ECF No. 6.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC,

age, education, and work experience. 20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

**III.   The ALJ's Findings of Fact and Conclusions of Law**

In his October 17, 2024 decision, the ALJ found plaintiff not disabled and made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.

2. The claimant has not engaged in substantial gainful activity since June 21, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: chronic lymphocytic leukemia; Crohn's disease; Raynaud's syndrome; degenerative disc disease, lumbar spine; and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can never work at unprotected heights, he cannot tolerate any exposure to extreme cold, he can tolerate only occasional exposure to humidity, and he is limited to carrying out simple repetitive tasks.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 9, 1978 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 21, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 24-35.

### IV. Analysis

Plaintiff raises four issues on review. First, he argues that, when determining plaintiff's residual functioning capacity, the ALJ did not provide clear and convincing reasons for disregarding his statements about his own pain. Second, he argues that the ALJ's determination at step three was error under governing regulations. Third, plaintiff argues that the ALJ failed to address the combination of plaintiff's impairments when determining his RFC. Finally, plaintiff argues that the ALJ did not meet his burden of proof at step five. ECF No. 10 at 2. The court concludes that plaintiff has not shown error meriting remand.

**A. Partial Rejection of Plaintiff's Testimony**

When determining a plaintiff's residual functioning capacity, the ALJ must consider the plaintiff's testimony describing their symptoms and engage in a two-step inquiry to determine whether such testimony is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). If the claimant satisfies the first step of this analysis, and there is no evidence of

malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

Here, plaintiff argues that the ALJ erred by finding plaintiff's descriptions of his symptoms not credible without citing clear and convincing evidence to support that finding. ECF No. 10 at 2-3; ECF No. 13 at 3-4. The record does not support that contention. In his decision, the ALJ described plaintiff's testimony that, as a result of his impairments, he suffered on-going pain in his pelvis, jaw, and back; diarrhea, painful bowel movements, and abdominal pain; inability to sit, stand, or walk for long periods, and reliance on a walker to ambulate; intermittent use of an oxygen tank; extreme pain and numbness in his hands; and headaches and fatigue. AR 27-28. The ALJ found that plaintiff's impairments could reasonably be expected to cause these symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 28. The ALJ then detailed extensively the plaintiff's history of treatment contained in the record, and concluded:

> Despite some poor compliance with prescribed treatment, the claimant achieved remission of his leukemia, and he reported good tolerance of maintenance medications to treating providers. He received no ongoing treatment for lower back pain, and he did not receive treatment for Crohn's disease or Raynaud's syndrome until mid-2024, six years after the alleged onset date. Physical examinations were largely unremarkable, except for the claimant's hospitalization in 2022, from which he appears to have recovered fully, as he admitted that he uses oxygen sparingly, while the alleged prescribed walker is nowhere to be found in the record, indicating it is not medically necessary.

AR 33.

Despite plaintiff's contention to the contrary, these reasons—grounded, as they were, in contemporaneous evidence of plaintiff's treatment history—are sufficiently clear and convincing to justify the ALJ's rejection, in part, of plaintiff's testimony describing the intensity, persistence, and limiting effects of his symptoms. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (holding ALJ was reasonable in relying on objective medical evidence of claimant's

functioning over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding ALJ reasonably relied on physician's assessment of claimant's lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of disabling pain, as they conflicted with records from her physical examinations). Plaintiff has not shown that in this respect the ALJ's RFC finding lacked substantial evidence to support it.

### B. Step Three Analysis

Plaintiff next argues that the ALJ's step three determination lacked substantial evidence to support it insofar as the ALJ found that plaintiff's chronic lymphocytic leukemia did not meet the criteria for listing 13.05A2. ECF No. 10 at 3-4 (citing AR 25). Per plaintiff, this conclusion was error in light of the record of plaintiff's treatment history. ECF No. 10 at 4. The court concludes plaintiff has not shown error.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed as severe in 20 CFR Part 404, Subpart P, Appendix 1. AR 24-25. Relative to plaintiff's lymphocytic leukemia, the ALJ found that it did "not meet listing 13.05A2, as it has not required the initiation of more than one anticancer treatment regimen within a period of twelve consecutive months." AR 25; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 13.05.A.2 (defining severe lymphoma as including "Indolent lymphoma (including mycosis fungoides and follicular small cleaved cell) requiring initiation of more than one (single mode or multimodal) anticancer treatment regimen within a period of 12 consecutive months"). Plaintiff argues that this finding was error, as plaintiff has pursued a long treatment regimen that has included treatment with Ibrutinib and management of the side effects of same, including a period of hospitalization. ECF No. 10 at 4 (citing AR 636, 1154, 1323, 1519-54, 1574-76).

The record demonstrates substantial evidence for the ALJ's finding. To meet the standard in listing 13.05A2, there needed to be evidence that the plaintiff had initiated more than one treatment regimen for his leukemia during a consecutive twelve-month period. 20 C.F.R. § Pt.

1 404, Subpt. P, App. 1, 13.05.A.2.  Here, the record demonstrated that, during the relevant period,
2 plaintiff had a single treatment regimen for his leukemia, viz., treatment with Ibrutinib.  AR 1154-
3 56, 1520-24, 1543, 1547, 1551; *cf.* AR 1574-76.  Although the record indicates that this treatment
4 may not have caused remission, *see* AR 1154, 1322-23, there is no indication that plaintiff's
5 treatment regimen was changed during the claimed disability period, let alone that it was changed
6 to reflect more than two treatment regimens within a consecutive twelve-month period.  *See*
7 *generally* AR 1519-54; *see also* AR 1523 (identifying a possible alternative treatment regimen
8 should the Ibrutinib cease to be effective and should plaintiff's labwork indicate compatibility
9 with the alternative regimen).  The ALJ did not err, therefore, in concluding that the record did
10 not support a finding that plaintiff's leukemia was severe within the definition set forth in listing
11 13.05A2 of 20 CFR Part 404, Subpart P, Appendix 1.

### C. RFC Determination

Plaintiff next argues that the RFC is not supported by substantial evidence because the ALJ failed to account for the effect of the combination of all of plaintiff's impairments.  ECF No. 10 at 5-8; ECF No. 13 at 2-3.  Specifically, plaintiff argues that the ALJ erroneously failed to address the disabling effect of fecal incontinence due to Crohn's disease, numbness and pain in his hands due to Raynaud's syndrome, borderline auditory memory, limited mobility, and heart and respiratory failure requiring use of an oxygen tank.  ECF No. 10 at 5-8.  Upon review of the record, the court concludes that plaintiff has not shown his entitlement to remand on this basis.

As a preliminary matter, plaintiff makes no argument as to how the asserted error harmed him, i.e., in what way the RFC determination would have differed, and been more favorable to a disability finding, had the ALJ properly accounted for the combination of impairments plaintiff identifies.  *See* ECF No. 10 at 5-8; ECF No. 13 at 2-3.  This absence is fatal to plaintiff's argument that remand is warranted.  *See Shinseki*, 556 U.S. at 409; *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (plaintiff "does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for [plaintiff's] injuries in some

9

unspecified way.").

Moreover, the record does not support plaintiff's contention that the ALJ "failed to address," ECF No. 10 at 5, the impairments he identifies in his motion. The ALJ addressed plaintiff's gastric distress attributed to Crohn's disease.[5] *See* ECF No. 10 at 6. The ALJ observed that plaintiff had testified that "his Crohn's disease causes diarrhea and painful bowel movements, as well as abdominal pain," AR 28, and that he had sought treatment for epigastric and abdominal pain, bloating, and diarrhea in January and March of 2023. AR 29. A colonoscopy performed in January 2023 showed no remarkable findings, however. AR 29; *see* AR 1490-1501. In May 2024, plaintiff again presented with abdominal pain; a CT, colonoscopy, and biopsy were performed, which showed chronic, active ileitis, suggesting a diagnosis of Crohn's disease. AR 29. The ALJ found no treatment for Crohn's disease before this date, despite plaintiff's alleged date of June 2018 as marking the onset of his disability. AR 33. In light of this, the ALJ concluded that plaintiff's claims of disability during the relevant period due to his symptoms from Crohn's disease were of limited relevance to the RFC determination. *Ibid*. This determination was supported by the record before the ALJ and reflects no error. *See* 20 C.F.R. §§ 404.1520(e), 404.1520c(a), 404.1527(d)(2), 404.1545(a), 404.1546(c); 416.945(a); *see generally Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict").

The record does not support plaintiff's claim that the ALJ failed to address plaintiff's numbness and pain in his hands attributed to Reynaud's syndrome. *See* ECF No. 10 at 6-7. The

---

[5] Although plaintiff characterizes this as "fecal incontinence" in his motion, *see* ECF No. 10 at 5-6, the evidence on which plaintiff relies is his testimony describing persistent diarrhea. ECF No. 10 at 6 (citing AR 56); *see* AR 56-57.

10

ALJ recounted plaintiff's testimony about these symptoms, AR 28, and that his medical records that he had sought treatment for these symptoms in April 2024. AR 29. At that visit, plaintiff was diagnosed with Reynaud's syndrome. *Ibid*. The ALJ credited plaintiff's claims that these symptoms impaired his abilities to work, finding that plaintiff was not able to perform a full range of light work due to, inter alia, "history of Raynaud's syndrome, with poor cold tolerance." AR 31. Similarly, the ALJ partially rejected the opinion of medical consultant Ford, who had found plaintiff capable of performing light work with some restrictions, because, inter alia, Dr. Ford's opinion failed to account for plaintiff's poor cold tolerance due to Raynaud's syndrome. *Ibid*. The ALJ, however, rejected the opinion of Dr. Tanson, that plaintiff could tolerate "no exposure to extreme temperatures," as it was inconsistent with the fact that plaintiff had not sought or received any treatment for Raynaud's syndrome, or its symptoms, during most of the period of claimed disability. AR 33. In light of the foregoing, plaintiff's claim that the ALJ failed to consider the Raynaud's syndrome symptoms in fashioning the RFC is unsupported by the record. The record instead demonstrates that the ALJ properly considered plaintiff's testimony about these symptoms in light of the entirety of the record and appropriately reconciled plaintiff's claimed impairments with the evidence before him, including reconciling discrepancies amongst medical experts' various opinion on this point. *See Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Benton*, 331 F.3d at 1040. Plaintiff has not shown error on this basis.

The record also does not support plaintiff's argument that the RFC determination was flawed by failing to address evidence of his borderline auditory memory. ECF No. 10 at 7 (citing AR 1512). Plaintiff's medical records demonstrate that in May 2023, he was administered the WMS-IV by Lauri Stenbeck. AR 1509-12. On the "Logical Memory I" test of the Auditory Memory Index, he scored in the borderline range, and on the "Logical Memory II" test of the Auditory Memory Index, he scored in the low average range. AR 1512. In her clinical findings, Ms. Stenbeck described plaintiff's functioning as reflecting the low average range for auditory memory and that, overall, plaintiff "has some memory deficits compared to his overall intellectual functioning," but he "showed no clinical difference between his ability to retain and recall

auditory vs. visual information" and that "[t]his level of functioning suggests that he may occasionally need some repetition of instructions when he is learning new work tasks." *Ibid*. Consequently, she concluded that plaintiff may have "mild limitations" in his ability to work without special or additional supervision. AR 1514. The ALJ found Ms. Stenbeck's opinion partially persuasive. Relative to plaintiff's memory limitations, the ALJ observed that Ms. Stenbeck's opinion was consistent with the testing she performed, but was partially inconsistent with the observations she made of plaintiff when conducting his mental status exam and with his self-reports of daily functioning and his adequate assessment for adaptive functioning. AR 32-33; *see* AR 1508-09.

In light of the foregoing, the record does not support plaintiff's argument that the ALJ failed to account for plaintiff's auditory memory impairments. Rather, the ALJ appropriately considered this fact in light of the totality of the record before him, which was apt under the governing regulations. *See Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Benton*, 331 F.3d at 1040. Moreover, given the particular limitation Ms. Stenbeck proposed as resultant from plaintiff's memory deficits—that plaintiff was mildly limited in his ability to work without special or additional supervision—it is unclear how this was not encompassed by the RFC that provided that, inter alia, plaintiff was limited to "carrying out simple repetitive tasks" as a result of his impairments. *See* AR 27; *see also* 1514 (despite plaintiff's auditory memory impairment, Ms. Stenbeck opines he is capable of performing simple, repetitive tasks with no limitations). Plaintiff has not shown that the RFC lacked substantial evidence to support it in this regard. *See Stout*, 454 F.3d at 1052.

Plaintiff has also failed to show that the ALJ erred in his RFC determination by not taking into account plaintiff's reports of pain in his spine and hips that limits his mobility. ECF No. 10 at 7. The record indicates that the ALJ did consider such evidence when determining the RFC. The ALJ recounted plaintiff's testimony on this point, AR 27-28, and his reports of same to his treatment providers. AR 29. The ALJ apparently credited plaintiff's reports of his pain and its impediment to his work functioning, as the ALJ found persuasive Dr. Sharma's conclusions that plaintiff was limited in his ability to lift, carry, bend, stoop, kneel, and crouch, due to his reported

back and lower extremity pain. AR 32. The RFC reflects these limitations, finding that plaintiff can only perform light work; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; but cannot climb ladders, ropes, or scaffolds. AR 27. Given the totality of the record, the ALJ's determination on this issue is supported by substantial evidence and does not reflect the ALJ having disregarded plaintiff's evidence about his back and pelvic pain. *See Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Stout*, 454 F.3d at 1052.

Finally, the record does not support plaintiff's argument that the RFC erroneously failed to account for plaintiff's use of an oxygen tank for breathing assistance. The ALJ recounted plaintiff's testimony that he occasionally used the oxygen tank that he had been prescribed as pneumonia treatment in 2021, AR 28, as well as his treatment records in which he had reported the same to medical providers. AR 29 (citing AR 1502-06). The ALJ credited plaintiff's reports of breathing difficulties and shortness of breath, but observed that even by plaintiff's own reports, he only requires occasional use of an oxygen tank. AR 33; *see* AR 62-63, 65 (plaintiff's testimony). As such, the ALJ concluded that plaintiff was not more restricted than the limitations described in the RFC. AR 33. Given the totality of the record, plaintiff has not shown that the ALJ failed to account for plaintiff's oxygen use and breathing impairments, nor that the ALJ's ultimate determination of this issue lacked substantial evidentiary support. *See Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Stout*, 454 F.3d at 1052.

In sum, plaintiff has not shown that the ALJ's RFC determination was erroneous. The totality of the ALJ's determination of plaintiff's RFC indicates that he aptly considered all medical evidence before him and properly relied on objective medical data, synthesizing and weighing it in light of the entire record. *See* 20 C.F.R. § 404.1529(c); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Accordingly, plaintiff has provided no basis to reverse the agency's decision. *See* 42 U.S.C. § 405(g).

**D. Step Five Determination**

Plaintiff argues that the ALJ's determination at step five was erroneous because it was premised on the RFC that was flawed for the reasons plaintiff argued above. ECF No. 10 at 9. For the reasons set forth *ante*, the RFC was supported by substantial evidence and was not flawed

in the manner plaintiff identifies. As such, there is no purchase for plaintiff's argument that the ALJ's step five determination was consequently flawed. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Review of the record indicates that the ALJ's decision was supported by substantial evidence at each of the five steps of its required analysis and that plaintiff has provided no lawful basis for remand to the agency. *Stout*, 454 F.3d at 1052; 42 U.S.C. § 405(g).

V.  **Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is denied;

2. Defendant's cross-motion for summary judgment (ECF No. 12) is granted;

3. The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: September 12, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE